**In re Christine H. WIGGINS, Debtor.**

**William Roy Lyons and Dianne E. Lyons, Plaintiffs,**

v.

**Christine H. Wiggins, Defendant.**

**Bankruptcy No. 99–3527–3P7.**
**Adversary No. 99–238.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 9, 2000.

Terrance A. Jones, Orange Park, FL, for Plaintiffs.

Lisa C. Cohen, Gainesville, FL, for Defendant/Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This proceeding came before the Court upon the complaint of William Roy Lyons and Dianne E. Lyons ("Plaintiffs") seeking to except a debt from the discharge of Christine H. Wiggins ("Defendant") pursu-

ant to 11 U.S.C. § 523(a)(2)(A). On March 30, 2000 the Court conducted a trial and requested written submissions in lieu of closing oral argument. (Adv. Doc. 14.) Upon review of the evidence presented and the submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Prior to their divorce in August 1999 Defendant was married to Joe Wiggins ("Husband"), a residential homebuilder. Husband operated a construction business as a corporation named Wiggins Construction Company. Husband was the sole shareholder and officer of the corporation. Plaintiffs were neighbors of Defendant and Husband, and Husband had built a home for them.

2. On or about March 21, 1997 Plaintiffs lent to Defendant and Husband the sum of $28,000. Simultaneously, Defendant and Husband executed a promissory note and mortgage to Plaintiffs on a certain parcel of real estate located in Clay County, Florida (the "Peters Creek Property"). (Pl.'s Exs. 1–2.) The Peters Creek Property was titled in the name of Defendant and Husband as tenants by the entireties.

3. On or about September 15, 1997 Husband contacted Plaintiffs and notified them that he and Defendant had a buyer for the Peters Creek Property. Husband asked Plaintiffs to release their mortgage on the Peters Creek Property and offered to substitute two parcels of property (the "Ravines Lots") as collateral for the original note and mortgage.

4. Husband retained an attorney, William Hamilton, to prepare the necessary closing documents. Jeri Waugh, legal assistant for William Hamilton, testified that she obtained all information regarding the closing from Husband.

5. On or about September 29, 1997, as part of the closing, Plaintiffs executed Mortgage Modification Agreement and Partial Release of Mortgage ("Mortgage Modification Agreement") whereby Plaintiffs released their mortgage on the Peters Creek Property and substituted the Ravines Lots as collateral. (Pl.'s Ex. 3.) The Mortgage Modification Agreement indicated that Defendant and Husband owned the Ravines Lots individually. Plaintiffs did not obtain title insurance in connection with the Mortgage Modification Agreement.

6. On October 13, 1997 Defendant signed Mortgage Modification Agreement for herself, and for Husband by way of power of attorney. Thereafter, Husband signed for himself.

7. Defendant testified that she first learned of the closing when Husband called her and told her to attend and sign on his behalf. Defendant also testified that there had been other occasions when Husband had directed her to go to closings and sign documents. Defendant indicated that she never inquired as to the substance of the documents she signed or as to the transactions in general. Husband testified that he never consulted Defendant about any substantive business decisions, financial or otherwise.

8. Defendant testified that she did not read Mortgage Modification Agreement that she signed in connection with the closing on the Peters Creek Property. Plaintiff, William Roy Lyons, agreed that he never had any substantive conversations with Defendant about the Mortgage Modification Agreement.

9. Plaintiffs subsequently discovered that the Ravines Lots were not owned by Defendant and Husband individually, but were owned by Wiggins Construction Company.

10. On May 13, 1999 Defendant filed a Chapter 7 petition in this Court. (Doc. 1.)

11. On August 18, 1999 Plaintiffs filed a complaint seeking to except a debt from the discharge of Defendant pursuant to 11 U.S.C. § 523(a)(2)(A). (Adv. Doc. 1.)

## CONCLUSIONS OF LAW

Plaintiffs assert that Defendant fraudulently induced them into releasing their mortgage on the Peters Creek Property by misrepresenting in the Mortgage Modification Agreement that she and Husband owned the Ravines Lots individually. Plaintiffs contend that they never would have released their mortgage on the Peters Creek Property had they known Wiggins Construction Company was the true owner of the Ravines Lots.

Defendant asserts that she did not make a false statement as to ownership of the Ravines Lots with the intent of defrauding Plaintiffs. Defendant claims that she was not apprised of the substance of the Mortgage Modification Agreement and was simply following the directions of Husband when she signed the document. Defendant contends that even if fraudulent intent is shown, Plaintiffs' reliance on the statement of ownership in the Mortgage Modification Agreement was not justifiably founded because they did not procure title insurance.

### I.  11 U.S.C. § 523(a)(2)(A)

■■■  In order to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A) [1] Plaintiffs must establish that: (1) Defendant made a false representation with the purpose and intent of deceiving Plaintiffs; (2) Plaintiffs relied upon the representation; (3) Plaintiffs reliance on the representation was justifiably founded; and (4) Plaintiffs sustained a loss as a result of the representation. *See Fuller v. Johannessen (In re Johannessen)*, 76 F.3d 347, 350 (11th Cir.1996). Plaintiffs must prove each element by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■■■  Fraudulent intent need not be shown by direct evidence, but may be inferred from the totality of the circumstances. *See Bropson v. Thomas (In re Thomas)*, 217 B.R. 650, 653 (Bankr. M.D.Fla.1998) (citing *American Sur. & Cas. Co. v. Hutchinson (In re Hutchinson)*, 193 B.R. 61, 64 (Bankr.M.D.Fla. 1996)). Reliance under § 523(a)(2)(A) must be justifiable under the circumstances, and is gauged upon "an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 281 (11th Cir.1995) (quoting W. PAGE KEATON, PROSSER & KEETON ON TORTS § 108, at 749 (5th ed.1984)).

Defendant relies primarily on the Court's prior decision in *Thomas*, 217 B.R. at 653, to support her position. In *Thomas*, the creditor became involved in a business venture involving an auto dealership owned by the debtor-wife and managed by the debtor-husband. *See id.* The creditor entered into an oral agreement with the debtor-husband and agreed to make certain loans to him in order to purchase vehicles with the understanding that the loans would be repaid when the vehicles were sold. *See id.* The debtor-husband subsequently closed the lot and liquidated the remaining vehicles without remitting the proceeds to the creditor. *See id.*

The only evidence produced at trial concerning the debtor-wife's involvement in the business dealings between the creditor and the debtor-husband was her issuance of checks to the creditor in partial repay-

---

1.  11 U.S.C. § 523(a)(2)(A) provides in pertinent part that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

11 U.S.C. § 523(a)(2)(A) (West 2000).

ment of a loan. *See Thomas*, 217 B.R. at 654. The creditor also conceded that the debtor-wife was not involved with the management of the lot at the time the loan agreement was entered into with the debtor-husband. *See id.* The Court thus found that the creditor failed to produce any evidence demonstrating that the debtor-wife made false representations to the creditor which induced him to loan money to the debtor-husband. *See id.* In regard to the debtor-husband, the Court found the evidence insufficient to prove that the debtor-husband knew he could not, or did not intend to repay the loans when he entered into the agreement. Moreover, the Court noted that even if the creditor could prove that the debtor-husband made a false representation with the intent to deceive the creditor, reliance was not justifiable because the creditor had a college degree in accounting and prior business experience, including experience in the car lot business. *See id.* The Court pointed out that the creditor simply made a bad investment and used poor judgment in continuing to loan the debtor-husband money when the original loans were not being repaid in accordance with their agreement. *See id.*

■ Defendant contends that the facts in *Thomas* are strikingly similar to the case at bar and therefore, the Court should likewise find that Plaintiffs have failed to carry their burden as to the elements of nondischargeability. *See* 217 B.R. at 653. The Court agrees. Plaintiffs' fraud claim is based solely on the statement contained in the Mortgage Modification Agreement which indicated that Defendant and Husband owned the Ravines Lots individually. The evidence introduced at trial establishes that Plaintiffs dealt exclusively with Husband with regard to the loan transaction. Defendant testified that she did not read the Mortgage Modification Agreement, and Husband confirmed that he did not discuss the substance of the loan transaction with her. Plaintiff, William Roy Lyons, also indicat-

ed that he never had any substantive conversations with Defendant about the Mortgage Modification Agreement. Moreover, the testimony of Jeri Waugh, legal assistant to the closing attorney, corroborates the fact that Husband was acting alone with regard to the Mortgage Modification Agreement. Based on the preceding, Plaintiffs' § 523(a)(2)(A) claim cannot succeed as Plaintiffs have failed to prove that Defendant made a false representation with the intention of deceiving them.

■ Nonetheless, even if Plaintiffs could prove that Defendant made a false representation with the intent to deceive, Plaintiffs' reliance on the statement was not justifiable under the circumstances. As in *Thomas*, "[t]his is not a situation in which a sophisticated businessman enticed an uneducated novice into a bad deal." 217 B.R. at 654. Plaintiff, William Roy Lyons, testified that he has a college degree in education and also completed a certain amount of post-graduate work. Plaintiffs are real estate owners and understand the concept of title insurance. Unfortunately, Plaintiffs used poor judgment in modifying their existing mortgage on the Peters Creek Property and substituting the Ravines Lots as collateral without obtaining title insurance. There is no doubt that Defendant acted imprudently when she signed the Mortgage Modification Agreement without being apprised of its contents. However, Defendant's actions do not amount to fraud and are not sufficient to except the debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

### CONCLUSION

Based on the foregoing, Plaintiffs have failed to prove by a preponderance of the evidence that Defendant acted with fraudulent intent or that Plaintiffs justifiably relied on Defendant's representations. Accordingly, the debt owed to Plaintiffs by Defendant is not excepted from Defendant's discharge pursuant to 11 U.S.C. § 523(a)(2)(A). A separate judgment will

be entered in accordance with these Findings of Fact and Conclusions of Law.